IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ASHAUNTIARA CODY, )
)
Plaintiff, ) No. 14-cv-8284
)
v. ) Jeffrey T. Gilbert
) Magistrate Judge
CHARMAN ROGERS-POELINTIZ; )
MARIE JENNINGS; COOK COUNTY, )
ILLINOIS, (acting through Cook County )
Health and Hospital Systems), )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ashauntiara Cody sued Defendants Charman Rogers-Poelinitz, Marie Jennings, and Cook County, Illinois (acting through Cook County Health and Hospital Systems), alleging deliberate indifference to her serious medical needs. [ECF No. 35.] Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF No. 65.] For the reasons stated below, Defendants' Motion for Summary Judgment is denied.

## I. BACKGROUND

The summary judgment motion now before the Court only raises the issue of exhaustion of administrative remedies. The Court, though, will provide a short description of the substantive allegations underlying this lawsuit before turning to the facts relevant to the exhaustion issue.

A.  **Substantive Allegations**[1]

On April 25, 2013, Ashauntiara Cody ("Cody") entered Cook County Jail ("CCJ") as a pretrial detainee. Plaintiff Ashauntiara Cody's Response to Defendants' Local Rule 56.1(A)(3) Statement of Material Facts ("Plaintiff's 56.1 Response"), ECF No. 74, ¶¶ 1, 4. By late September of 2013, Cody was visibly pregnant, with just a month remaining until her due date. Defendants' Answer to Plaintiff's Amended Complaint, Affirmative Defenses and Jury Demand ("Answer"), ECF No. 48, ¶ 10. Then, however, events took a turn for the worse, according to Cody's complaint. On September 28, 2013, she began to experience severe abdominal pain and extreme wetness in her vaginal area. ECF No. 35, ¶ 12. She asked and was given permission to see a nurse or doctor employed by Cook County Health and Hospital ("CCHH"), which was responsible for overseeing the medical care of inmates at CCJ. *Id.* ¶¶ 8, 12. Cody ended up seeing Defendant Charman Rogers-Poelinitz ("Nurse Rogers-Poelinitz"), who worked as a nurse and was dispensing medicine. *Id.* ¶¶ 13, 14. Nurse Rogers-Poelinitz told Cody that she was probably having bladder control issues, because of the pregnancy, and should use a sanitary napkin. *Id.* ¶ 14. Later that same day, Cody was allowed to speak with another nurse, Defendant Marie Jennings ("Nurse Jennings"). *Id.* ¶ 15. Nurse Jennings instructed Cody to take Pepto Bismol. *Id.*

The next morning, Cody noticed a greyish discharge on her wet sanitary napkin. *Id.* ¶ 17. Cody went to see Nurse Rogers-Poelinitz again, telling her of the continued pain and wetness, as well as the new discharge. *Id.* Nurse Rogers-Poelinitz recommended Pepto Bismol as well. *Id.* As Cody's condition continued to deteriorate, she told a case worker and her mother about what

---

[1] The allegations in Cody's Amended Complaint [ECF No. 35] provide the basis for the narrative in this section of the Opinion. For rhetorical purposes, the facts are summarized as if they are true, as in the context of a Rule 12(b)(6) motion, but that is not intended as an indication that the Court has made any such findings at this juncture. In all other sections of the Opinion, though, the relevant facts are drawn from the parties' Local Rule 56.1 submissions and are undisputed unless otherwise stated.

2

was happening to her at CCJ. *Id.* ¶ 19. One of CCHH's doctors saw Cody after she asked to see a doctor. *Id.* ¶ 20. The doctor found that Cody's amniotic sac had burst, and that there was no amniotic fluid left to protect the baby and aid in delivery. *Id.* ¶ 21. The doctor determined that Cody should be sent by ambulance to John Stroger Hospital. *Id.*

At the hospital, the doctor there delivered Cody's son, Hardie E. Bell, by a C-section. *Id.* ¶ 24. (Cody's son is not a party to this case.) The doctor told Cody that Bell, who was born 30 days premature, had breathing issues and a respiratory infection because of the delay in medical treatment. *Id.*

Cody alleges that Defendants' deliberate indifference in providing her medical care caused (1) pain and suffering from September 28 to September 30 while she was awaiting appropriate medical care, (2) an unnecessary C-Section that led to disfigurement, and (3) immense mental distress. *Id.* ¶ 26; Plaintiff's 56.1 Response, ¶ 3.

**B.     Exhaustion of Administrative Remedies**

In 2013, CCJ had an established grievance procedure, which was described in the March 2013 CCDOC Inmate Information Handbook ("Inmate Handbook") and a Cook County Sheriff's Office Order from July, 2011, ("Sheriff's Order"). *See* Plaintiff's 56.1 Response, ¶ 5. Cody first learned of CCJ's grievance procedure in September, 2013. *Id.* The parties dispute whether she received a copy of the Inmate Handbook upon intake at CCJ. Defendants' Response to Plaintiff's Response to Defendants' Local Rule 56.1(A)(3) Statement of Material Facts and Supplemental Facts ("Defendants' 56.1 Response"), ECF No. 79-1, ¶ 1.

On October 9, 2013, Cody filed a grievance form regarding Nurse Rogers-Poelinitz's conduct. *Id.* ¶ 7. The next day, an employee of the Cook County Department of Corrections ("CCDOC") collected the form. *Id.* ¶ 8. On October 15, CCDOC referred Cody's grievance to

Cermak Health Services ("Cermak"). *Id.* ¶ 9. On October 23, Cermak's quality improvement department sent the grievance to the nursing care department. Defendants' 56.1 Response, ¶ 6. The nursing care department never responded. *Id.* ¶ 7. Then, on November 5, Linda Murakami, who was the director of quality improvement at Cermak, reviewed Cody's grievance and filled in a box on the Grievance Response titled "Response by personnel handling referral." *Id.* ¶ 8. In that section, Murakami wrote, "Grievance sent to nursing dept[.]" [ECF No. 66-3, at 3.] Cody received a copy of this Response on November 19, 2013. Plaintiff's 56.1 Response, ¶ 11. After receiving this form, Cody did not appeal the Response, or speak with any CCJ employees about the Response. *Id.* ¶ 12.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). In deciding a motion for summary judgment, the court "review[s] the evidence in the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party opposing the motion for summary judgment "gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011). However, the opposing party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer*

v. *Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)). A court will grant summary judgment "if no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (internal quotation marks omitted); *see also Northbound Group, Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 966-67 (N.D. Ill. 2013).

### III. DISCUSSION

Under The Prison Litigation Reform Act, a prisoner must exhaust available administrative remedies before filing a lawsuit with respect to prison conditions. 42 U.S.C. § 1997e(a). To properly exhaust her remedies, an "inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). The issue raised by the present motion is whether Cody failed to exhaust her administrative remedies by not appealing the response she received that said "Grievance sent to nursing dept[.]" It is undisputed that she did not appeal this response. Defendants' argument, therefore, is relatively simple: Cody's failure to appeal the Grievance Response means she did not exhaust her available administrative remedies. The problem with Defendants' argument is that CCJ's grievance process did not require Cody to appeal when she received the Grievance Response.

Defendants rely on the fact that the Grievance Response said, "To exhaust administrative remedies, appeals must be made within 14 days of the date the inmate received the response." [ECF No. 66-3, at 3.] This language standing alone, however, does not identify what can or should be appealed under CCJ's grievance policy. Other documents that describe the policy more clearly address this issue.

The Inmate Handbook "describes" CCJ's grievance procedure. Defendants' 56.1 Response, ¶ 1. Under the heading "The Inmate Grievance Process," the Inmate Handbook informs inmates that, "If you do not agree with the *grievance decision*, you have fourteen (14) calendar days from receipt of the decision to appeal." [ECF No. 74-4, at 26] (emphasis added). "Grievance decision" is not itself defined in the Inmate Handbook. But its meaning may be ascertained from other paragraphs in the same section of the Handbook.

Paragraph 3 of that section notifies inmates that, after they file a grievance, the "CCDOC or other responding party (for example, Cermak or the food service provider) has 15 business days upon receipt of your grievance to sustain or not sustain your grievance and assign a remedy." *Id.* at 25; *see also* Defendants' 56.1 Response, ¶ 5 (admitting that CCJ's grievance policies required that a response be provided to an inmate within 15 days of the receipt of the grievance). Paragraph 4 then says that an inmate "will receive a written decision about [his or her] grievance." [ECF No. 74-4, at 25.] The only reasonable reading of "written decision" is that it refers to the decision "to sustain or not sustain" a grievance. The only decisions that the CCDOC or other responding party can make—or, at least the only ones discussed in the Inmate Handbook—are: (1) whether to sustain or not sustain a grievance, and (2) what remedy, if any, to assign. Because these are the only issues to be decided, the phrase "written decision" must refer to decisions about these issues.

The Grievance Response provided to Cody did not explicitly sustain or not sustain her grievance. Although the Inmate Handbook does not define either of these terms, the Sheriff's Order does so. "Sustained" is defined in the Order as a "finding made that an inmate's grievance raises legitimate concerns that can be remedied through the grievance process." [ECF No. 74-2, at 4.] "Not sustained" is defined in the Order as a "finding that an inmate's grievance is not

6

based in fact and/or otherwise cannot be addressed through the grievance process." *Id.* at 3. The Response given to Cody did not say either that her grievance raised legitimate concerns, or that it was not based in facts or could not be addressed. Rather, the Response informed Cody that her grievance had been referred to the nursing department meaning, logically, it was still under consideration. Indeed, Defendants concede that the Grievance Response "referred the matter to the nursing department *for further review*." Defendants' 56.1 Response, ¶ 9. Therefore, the Grievance Response was not a "written decision" within the meaning of Paragraph 4 of the Inmate Handbook.

As mentioned above, the Inmate Handbook provided that an inmate could appeal only if he or she "[did] not agree with the *grievance decision* . . . ." [ECF No. 74-4, at 26.] There is no logical reason why the phrase "grievance decision" would have meaning different from "written decision." Under CCJ's policy, inmates are provided one grievance response form that includes a written decision. The policy does not provide for any other decision (written or non-written) regarding a grievance. Therefore, "grievance decision" must refer to the "written decision" conveyed in the Grievance Response. Because the Grievance Response provided to Cody was not a grievance decision, within the meaning of CCJ's policy, the Response was not appealable under CCJ's policy. That means appeal was not an *available* remedy that she was required to exhaust. *See Roy v. Dominguez*, 2010 WL 1568611, at *4 (N.D. Ind. Apr. 16, 2010) ("Rather, they responded to these grievances by telling Roy to set up a meeting with the warden to discuss the subject. This is not the sort of response that would always require an appeal.").

Moreover, it is not entirely clear what Defendants think Cody should have appealed. The Grievance Response did not decide the merits of her grievance. Presumably, Defendants think Cody should have appealed the decision to refer her grievance to the nursing care

7

department. This proposition does not make sense. The referral was simply procedural in nature, and neither Cody's grievance nor the present lawsuit challenges the procedure by which Defendants evaluated grievances. *See* Defendants' 56.1 Response, ¶ 9 (conceding that the referral was "for further review" of Cody's grievance). Moreover, as established by uncontradicted deposition testimony of Cermak's director of quality improvement, the nursing care department was the only department that could provide a substantive response to Cody's grievance. Deposition of Linda Murakami ("Murakami Dep."), ECF No. 72, 46:1-6. Although Cody may not have appreciated this fact, she concluded that this referral meant her grievance was still under review and that a substantive response would be forthcoming. Defendants' 56.1 Response, ¶ 11. For this reason, Cody was satisfied by the Grievance Response that she received. Ashauntiara Cody's Deposition, ECF No. 72, at 34:14-35:14. It would be absurd to conclude that, to exhaust her administrative remedies regarding the substance of her grievance, Cody had to appeal a positive procedural development without which her grievance could not be resolved. *See Martin v. Cook Cty. Dep't of Corr.*, 2013 WL 1181491, at *5 (N.D. Ill. Mar. 20, 2013) ("Nothing else in the record suggests that Plaintiff should have taken additional steps once he submitted a grievance and received an apparently favorable response."). Regardless, again, CCJ's grievance policy did not require that she do so.

Defendants emphasize that Cody was not misled by any CCJ officials because she never asked questions about the response she received. [ECF No. 67, at 5-6.] Essentially, this amounts to an argument that Cody's failure to follow-up on her grievance, in some manner other than by appealing, means she failed to exhaust her administrative remedies. This contention also is flawed. CCJ's grievance policy, as reflected by the Inmate Handbook and Sheriff's Order, does not describe any process by which an inmate must, should, or even can follow-up when a proper

grievance decision is not forthcoming. Because the policy did not "instruct a prisoner" what she should do when the CCDOC fails to respond in a manner consistent with CCJ's grievance policy, Defendants have failed to identify an unexhausted administrative remedy that actually was available to Cody. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).

As the Seventh Circuit has recognized, the "exhaustion requirement of § 1997e(a) does not require that inmates appeal from unresolved grievances." *Towns v. Holton*, 346 F. App'x 97, 100 (7th Cir. 2009). When a jail fails to provide an appealable grievance response, an inmate is deemed to have exhausted her available administrative remedies if prison officials ignore the grievance. *Lawrence v. Richardson*, 2014 WL 3341600, at *5 (S.D. Ind. July 7, 2014). Any reasonable definition of "ignore" encompasses the failure to provide a proper, substantive response. *See Roy*, 2010 WL 1568611, at *3 ("Administrative remedies are unavailable if prison officials do not respond to grievances."). Therefore, in this case, Cody exhausted the available administrative remedies because she was never provided an appealable grievance response. Based on these undisputed facts, the Court finds that, as a matter of law, Cody exhausted her available administrative remedies.

Finally, Cody argues that, even if the Grievance Response were appealable under CCJ's policy, her lawsuit cannot be barred by her failure to appeal because CCJ's policy did not require her to file a grievance in the first instance. Because Cody actually filed a grievance and the Court has found that she exhausted the available administrative remedies with respect to that grievance, the Court need not address this argument.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [ECF No. 65] is denied.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 11, 2016